**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELAINE GRISSOM | ) | |
| 55988 Seneca Lake Rd. | ) | |
| Quaker City, OH 43773 | ) | |
| | ) | |
| TORJIMAR, INC. | ) | CASE NO. 2:20-cv-2028 |
| c/o James F. Kacsmar | ) | |
| 121 E Main St. | ) | JUDGE |
| St. Clairsville, OH 43950 | ) | |
| | ) | |
| THE GRISSOMS, LLC | ) | CLASS-ACTION COMPLAINT |
| c/o Jennifer L. Routte | ) | |
| 142 Granville St. | ) | JURY DEMAND REQUESTED |
| Gahanna, OH 43230 | ) | |
| | ) | |
|     Plaintiffs, on their own | ) | |
|     behalf and on behalf of the | ) | |
|     class similarly situated, | ) | |
| v. | ) | |
| | ) | |
| ANTERO RESOURCES CORPORATION | ) | |
| c/o CT Corporation System, | ) | |
| 4400 Easton Commons Way, Ste 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
|     Defendant. | ) | |

Plaintiffs Elaine Grissom, Torjimar, Inc., and The Grissoms, LLC, individually and for a proposed class of others similarly situated, submit this Complaint against Defendant Antero Resource Corporation to obtain money damages from Defendant for violating uniform oil-and-gas leases by underpaying royalties owed to Plaintiffs in connection with Defendant's receipt of gross proceeds from the sale of marketable natural gas liquids ("NGLs").

**STATEMENT OF THE CASE**

NGLs are unique products in the oil-and-gas industry. The factual question of when NGLs, as opposed to other hydrocarbons, are in "marketable form" is one of the central issues in

1

this lawsuit. The answer to this question is important because the leases at issue specifically prohibit the deduction of costs and expenses related to "transform[ing] the product into **marketable form**." (*See* Exhibit 1 (emphasis added).)

Antero's NGLs are not in "marketable form" until the completion of the fractionation process and the exiting of the NGLs from the tailgate of the Hopedale Fractionation Facility located in Jewett, Ohio. Antero incurs substantial costs and expenses in transforming its NGL products into marketable form, much of which Antero has been deducting from its royalty payments to lessors, such as Plaintiffs, over the last four years. These "Impermissible Deductions" constitute breaches of contract because of the specific language found in the "Gas and Market Enhancement Clauses" of the lease common to all proposed class members.

In addition to taking such improper deductions routinely, Antero sometimes calculates its monthly royalty payments on the basis of a "theoretical y-grade proceeds" methodology. Antero's use of this methodology — which calculates royalty payments on the basis of "theoretical," as opposed to actual, sales — is flatly impermissible under the common lease. Antero's use of this methodology similarly results in the routine underpayment of royalties to Plaintiffs and the proposed class members.

While Antero's "Gas and Market Enhancement Clauses" are common to all proposed class members, they are nevertheless unique clauses in the oil-and-gas industry, especially as concerns the transformation of NGLs into marketable form. Accordingly, in filing this lawsuit, Plaintiffs seek damages based on the resolution of unique questions of law and fact involving a unique contract and a unique set of facts.

## PARTIES

1.      Plaintiff Elaine Grissom ("Mrs. Grissom") resides in Noble County, Ohio. In 2012, Mrs. Grissom and her late husband, James Grissom, owned the surface-and-mineral interests in these described lands (the "Property"):

| County | Township | Sec/Twp/Range | Acreage | Tax Number |
|--------|----------|---------------|---------|------------|
| Noble | Beaver | 21/8/7 | 96 | 01-00-21349-000 |
| Noble | Beaver | 21/8/7 | 75 | 01-00-50112-000 |

2.      Plaintiff Torjimar, Inc. ("Torjimar"), is an Ohio corporation—solely owned by Mrs. Grissom—that now owns the surface-and-mineral interests associated with the Property.

3.      Plaintiff The Grissoms, LLC (the "Grissom LLC") is an Ohio limited liability company—again solely owned by Mrs. Grissom—that receives royalty payments from Antero Resources Corporation in connection with the Property.

4.      Mrs. Grissom, Torjimar, and the Grissom LLC are collectively referred to herein as "Plaintiffs."

5.      Defendant, Antero Resources Corporation ("Antero" or "Defendant"), is a Delaware corporation with a principal place of business at 1615 Wynkoop Street, Denver, Colorado, 80202. Antero is an independent oil-and-natural gas company engaged in the exploration, development, production, and sale of natural gas, crude oil, and NGLs.

6.      At all times relevant herein, Plaintiffs have leased the surface-and-mineral interests in the Property to Antero pursuant a lease that became effective in 2012 and continues in effect to the present day.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this case, exclusive of interest and costs, involves claims in excess of $5 million in damages and

is a class action in which Plaintiffs and class members are citizens of states different than Antero.

8.      This Court has personal jurisdiction over Antero because Antero is authorized to do business and conducts business in Ohio, has sufficient minimum contacts with Ohio, and has sufficiently availed itself of Ohio law and markets, thereby rendering the exercise of personal jurisdiction by this Court permissible.

9.       Venue is proper under 28 U.S.C. § 1391(b)(2) since this case arose in this district and Antero's unlawful conduct occurred here.

10.       Venue is also proper because Antero (a) is authorized to conduct business in this district and has intentionally availed itself to the laws and markets within this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTS

The principal facts in support of this lawsuit are set forth below:

**A.      How Antero Uniformly Transforms Certain Components of Raw Liquids-Rich Natural Gas (Found in the Utica Shale Formation) into Marketable NGLs**

11.      NGLs are liquid hydrocarbons derived from various components of raw liquids-rich natural gas. Raw liquids-rich natural gas is sometimes called "wet natural gas" or "wet gas."

12.      Examples of NGLs include ethane, propane, butane, iso-butane, hexane, iso-hexane, pentane, and iso-pentane.

13.      NGLs, including those of Antero, are not in marketable form until a process called "fractionation" is complete, as explained in detail below.

14.      There are domestic and international markets for such NGLs. For instance, the Marcus Hook hub located outside of Philadelphia, PA (the "Marcus Hook Hub"), is one of the

largest NGL hubs in the United States. Antero and its agents regularly use the Marcus Hook Hub for the sale of marketable NGLs derived from Antero's operations in Ohio.

15.     Each marketable NGL has its own market price. Thus, on a typical day, the market price of the NGL known as ethane differs from the price of the NGL known as propane.

16.     The Utica Shale Formation in Ohio (the "Utica Formation") is a geological concentration of calcareous, organic, and rich shale in the Appalachian Basin in Eastern Ohio.

17.     The Utica Formation contains raw liquids-rich natural gas (i.e., raw natural gas that contains various suspended liquid molecules that can be transformed, through a complicated process, into individual marketable NGLs), as well as dry natural gas (i.e., natural gas that contains primarily methane).

18.     Antero owns and operates a network of 173 horizontal wells in Belmont, Carroll, Guernsey, Monroe, and Noble counties in the Utica Formation where there exists a concentration of raw liquids-rich natural gas.

19.     These 173 horizontal wells are connected by pipelines in a single gathering, compression, and fractionation system called the Seneca System.

20.     Antero Midstream Corporation ("Antero Midstream") owns both the gathering pipelines and the compression stations in the Seneca System.

21.     MarkWest Energy Partners ("MarkWest") owns an interest in the processing and fractionation plants that Antero uses to help create marketable NGLs via the Seneca System.

22.     From in-ground to market, Antero transforms components of the raw liquids-rich natural gas into marketable NGLs via the Seneca System by using the following processes:

a.      Following Antero's hydraulic fracturing of horizontal wells in the Utica Formation, Antero extracts a combined stream of (i) raw liquids-rich natural gas and (ii) crude oil from these horizontal wells;

b.      Antero uses a separator on the horizontal well pad to separate the crude oil from the raw liquids-rich natural gas;

c.      After separating the crude oil, Antero sends its remaining stream of raw liquids-rich natural gas through gathering pipelines (owned by Antero Midstream) until that stream reaches a compressor station such as the Batesville, Reusser, and Upper Hill compressor stations (also owned by Antero Midstream);

d.      The raw liquids-rich natural gas is compressed at the compressor station, after which Antero sends that stream of (now compressed) liquids-rich natural gas through a pipeline to the Seneca Processing Plant (owned at least in part by MarkWest);

e.      At the Seneca Processing Plant, the processor separates the various liquid hydrocarbons (which are suspended as liquid molecules in the otherwise compressed natural gas), and those various liquid hydrocarbons form into a y-grade NGL mixture called "raw make" or "raw mix" (at this juncture, the raw make is still an unfractionated blend of the various purity products that make up the NGL product family);

f.      Next, the remaining compressed natural gas, which Plaintiffs' case ***does not*** concern, is sent via pipeline to market, and the y-grade raw make, which Plaintiffs' case ***does*** concern, is sent via pipeline to a central fractionation facility (here, the MarkWest-owned Hopedale Fractionation Facility);

g. At the Hopedale Fractionation Facility, fractionation occurs by heating the raw make to allow for the separation, or fractionation, of the individual component parts based on their differing boiling points, and so it is in this manner that the y-grade raw make is fractionated into individual component NGLs such as ethane, propane, butane, isobutane, hexane, isohexane, pentane, and isopentane;

h. After the completion of the fractionation process, the individual components are finally marketable NGLs which exit the tailpipe of the Hopedale Fractionation Facility on their way to markets such the above-described Marcus Hook Hub;

i. The individual component NGLs are sold by MarkWest on Antero's behalf or by Antero directly; and

j. MarkWest then charges Antero the following costs on a monthly basis for services necessary to transform the NGLs into marketable form: costs including, but not limited to, a processing fee, a fractionation fee, a C3+ recipient fee, a loading fee, and electricity and fuel fees (collectively referred to as the "MarkWest Fees").

**B. Antero's First Form Leases in the Utica Formation Favored Lessors Such as Plaintiffs on NGL Royalties Because of Unique Language in the Market Enhancement Clauses of Said Leases**

23. Horizontal wells are organized into units containing typically 3 to 4 wells each traversing 400 to 500 acres of land. Depending on the parcel sizes, each unit typically encompasses between 10 to 30 persons' mineral interests.

24.     Starting in 2012, Antero leased mineral interests in the Utica Formation through independent land brokers or landmen in targeted geographic areas. Typically, the broker or landman used an Antero-drafted form lease as the starting point for negotiations.

25.     At that time, the large-scale slickwater hydraulic fracturing of horizontal wells was a relatively new process, and the Utica Formation was in the early stages of an oil-and-gas boom where producers like Antero were rushing to lease land. Due to intense competition between oil-and-gas producers over mineral interests in the Utica Formation, Antero's form lease contained terms favorable to lessors on NGL royalty payments.

26.     Antero's 2012 form leases ("Form 2012") contained these two provisions regarding the calculation of NGL royalty payments:

> Gas. Lessee shall pay Lessor _____ Percent (__%) of the **gross proceeds** received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Property and sold by Lessee in an arm's length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Property during applicable months of sales. (hereinafter, the "Form 2012 Gas Clause" (emphasis added))

> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be **without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil**, **gas and other products produced hereunder to transform the product into marketable form**; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit

8

received by Lessee. (hereinafter, the "Form 2012 Market
Enhancement Clause" (emphasis added))

27.     As emphasized in the preceding paragraph, the Form 2012 Gas Clause requires

Antero to pay to lessors NGL royalties based on the "gross proceeds" that Antero receives for

NGLs.

28.     As emphasized two paragraphs ago, the Form 2012 Market-Enhancement Clause

prohibits Antero from deducting from NLG gross proceeds any costs associated with

transforming the NGLs into "marketable form," i.e., Antero cannot deduct any costs incurred

prior to the completion of the fractionation process and the exiting of the marketable form NGLs

from the tailgate of the Hopedale Fractionation Facility.

29.     The Form 2012 Market Enhancement Clause does, however, allow Antero to

deduct from NGL gross proceeds any costs that subsequently enhance the value of ***already***

***marketable*** NGLs, i.e., any costs that enhance the value of the NGLs arising ***after*** the

completion of the fractionation process at the Hopedale Fractionation Facility (thus, for instance,

transportation costs from the tailgate of Hopedale Fractionation Facility to a market such as that

found at the Marcus Hook Hub can be deducted under the Form 2012 Market Enhancement

Clause).

30.     Taken together, the Form 2012 Provisions benefit lessors by proscribing Antero

from deducting any costs arising prior to the completion of the fractionation and the exiting of

the NGLs from the tailgate of the fractionation facility (hereinafter, "Impermissible Deductions"

such as compression costs, gathering costs, and the MarkWest Fees, all of which costs arise prior

to the completion of the fractionation process that makes NGLs marketable) from NGL gross

proceeds.

31.     Apart from the transportation fees associated with moving the marketable NGLs from the tailgate of the Hopedale Fractionation Facility to market, once the NGLs are in their individual component marketable form, Antero does not incur any additional costs that enhance the value of the now marketable NGLs. So, with this exception for post-fractionation transportation noted, the Form 2012 Gas and Market Enhancement Clauses require Antero to pay lessors NGL royalties based on NGL gross proceeds without any Impermissible Deductions.

**C.     In 2013, Antero Changed its Form Lease Language to Become *Less* Favorable to Lessors on NGL Royalties**

32.     In 2013, after the rush to secure mineral interests from the Utica Formation slackened and lessors' leverage over Antero waned, Antero changed its form lease to reflect terms more favorable to itself on NGL royalties.

33.     The 2013 Antero form leases ("Form 2013") contain these two provisions regarding NGL royalty payment calculations:

> <u>Gas</u>. Lessee shall pay Lessor _____ Percent (__%) of the ***gross proceeds*** received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Property and sold by Lessee in an arms length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by the Lessee or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Property during applicable months of sales. (hereinafter, the " Form 2013 Gas Clause" (emphasis added))

> <u>Market Enhancement Clause</u>. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas

and other products produced hereunder; provided, however, ***Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily incurred to enhance the value of the oil, gas or other products, including transforming product into a marketable form, and in any such case***, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of any enhancement of the market value of such products. (hereinafter, the " Form 2013 Gas Clause" (emphasis added))

34.     From 2013 to the present day, Antero has used and continues to use the Form

2013 Gas and Market Enhancement Clauses for its post-2012 leases. The Form 2013 Market

Enhancement Clause differs materially from the Form 2012 Market Enhancement Clause

regarding the calculation of NGL royalty payments.

35.     The Form 2012 Market Enhancement Clause prohibits the deduction of costs

related to transforming the NGLs into marketable form (i.e., the Impermissible Deductions such

as gathering, compression, and the MarkWest Fees, all of which arise prior to the completion of

fractionation).

36.     The Form 2013 Market Enhancement Clause, however, purportedly allows for the

deduction of certain costs relating to the transformation of the NGLs into marketable form, i.e., it

purportedly allows for the deduction of some costs that arise post-extraction and prior to the

completion of the fractionation process, if they enhance the value of the NGL at the time (but

only if those costs are actually incurred by Antero and charged to it by a third party).

37.     For these purposes, the relevant portions of the Form 2012 and Form 2013 Market

Enhancement Clauses are follows:

Form 2012 Market Enhancement Clause: "[A]ll royalties . . . shall be without
deduction, directly or indirectly, for the cost of producing . . . other products
produced hereunder to transform the product into marketable form, however any

such costs which result in enhancing the value of the marketable . . . other products . . . to receive a better price may be proportionally deducted."

Form 2013 Market Enhancement Clause: "[A]ll royalties for . . . other production (including . . . natural gas liquids . . . ) . . . shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing . . . other products produced hereunder; provided, however, Lessee may deduct . . . from Lessor's royalties . . . any cost or expense actually incurred and charged to Lessee by a third party that . . . are necessarily incurred to enhance the value of . . . other products, including transforming product into a marketable form."

38.     When compared with each other it is apparent Antero deliberately changed its Form 2013 Market Enhancement Clause from the way the Form 2012 Market Enhancement Clause read in the following manner:

a.  The Form 2013 Market Enhancement Clause defines "other production" (i.e., other hydrocarbons and byproducts) to explicitly include NGLs, which shows the drafters had NGL royalty payment calculations in mind when they changed the language.

b.  The Form 2013 Market-Enhancement Clause moves the phrase "transforming product into marketable form" to after the word "however" in the middle of the clause, which purportedly allows Antero to deduct some post-extraction value-enhancing costs necessary to transform products into marketable form (e.g., gathering costs, compression costs, and the MarkWest Fees), but only if those value-enhancing costs are "actually incurred and charged to Lessee by a third party."

**D.     Antero's NGL Royalty Payment Methodologies for All Lessors with 2012 Form Leases Violates the Form 2012 Gas and Market Enhancement Clauses**

39.     Antero calculates NGL royalties for all lessors with Form 2012 Gas and Market Enhancement Clauses and Form 2013 Gas and Market Enhancement Clauses in the same manner, despite their material differences in terms.

40.     Antero uses two different methodologies to calculate NGL royalties: the NGL profit methodology and the theoretical y-grade gross proceeds methodology depending on which yields higher royalty payments to the lessor. Both methodologies violate the Form 2012 Gas and Market Enhancement Clauses.

**The NGL Profit Methodology**

41.     The NGL profit methodology entails Antero paying lessors their share of a well's NGL gross proceeds minus a deduction for at least the lessors' share of the MarkWest Fees. If Antero pays NGL royalties based on NGL profit per well:

a.    The royalty statement shows the NGL gross proceeds and the MarkWest Fees (denoted as "PCR2" on royalty statement) per well.

b.    The royalty statement shows the lessor's share of NGL gross proceeds and MarkWest Fees per well based on the lessor's mineral interest as a function of royalties and acreage.

c.    The royalty statement then calculates the lessor's NGL royalty payment by deducting the lessor's share of MarkWest Fees from the lessor's share of NGL gross proceeds.

42.     The Form 2012 Gas and Market-Enhancement Clauses prohibit Impermissible Deductions. The MarkWest Fees are Impermissible Deductions as they are all costs incurred to transform NGLs into marketable form before the fractionation process is complete.

13

43.     Where Antero bases NGL royalty payments on NGL profit methodology, Antero deducts lessors' share of the MarkWest Fees from their share of NGL gross proceeds. This violates the Form 2012 Gas and Market-Enhancement Clauses.

44.     Form 2012 lessors' damages equal all the MarkWest Fees Antero wrongfully deducted from their NGL royalty payments.

### The Theoretical Y-Grade Proceeds Methodology

45.     The theoretical y-grade proceeds methodology — which is completely impermissible under the Form 2012 lease, as it is mentioned nowhere therein — entails Antero paying lessors their share of a well's theoretical sales proceeds which Antero would have received if it had sold the y-grade at prevailing natural gas prices, rather than as transformed individually marketable NGLs.  If Antero pays NGL royalties based on theoretical y-grade proceeds per well:

> a.  The royalty statement does not show NGL gross proceeds and the MarkWest Fees per well.
>
> b.  Instead, the royalty statement shows only the natural gas royalty calculation.
>
> c.  The natural gas royalty calculation contains the quantity and quality of natural gas (i.e., BTU factor) produced from the well without a quantity and quality deduction for the y-grade extracted.
>
> d.  Theoretical y-grade proceeds equal the difference in the high-quality BTU Factor and the standard BTU Factor of 1.0000 multiplied by the natural gas price multiplied by the Plaintiff's share of the natural gas volume.

46. The Form 2012 Gas and Market-Enhancement Clauses requires Antero to base NGL royalties on NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

47. Where Antero bases NGL royalty payments on theoretical y-grade proceeds, Antero calculates NGL royalties by calculating natural gas royalties as if the y-grade raw make was never extracted from the raw liquid-rich natural gas. This violates the Form 2012 Gas and Market Enhancement Clauses because Antero is not paying the lessors NGL royalties based on NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

48. Form 2012 lessors' damages equal the difference between what Antero would have paid if Antero based NGL royalty payments on NGL gross proceeds without any Impermissible Deductions (such as the MarkWest Fees) and the NGL royalties Antero actually paid based on theoretical y-grade proceeds.

**F.    Plaintiffs' Lease with Antero Involving Mineral Interests in the Utica Formation Contains Form 2012 Gas and Market-Enhancement Clauses**

49. On February 10, 2012, Mrs. Grissom and her late husband, James Grissom, executed an oil-and-gas lease with Antero (*see* Exhibit 1) regarding the mineral interests underlying the Property. Their lease contained the Form 2012 Gas and Market Enhancement Clauses, as follows:

> Gas. Lessee shall pay Lessor Twenty-One Percent (21%) of the gross proceeds received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Estate and sold by Lessee in an arm's length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Estate during applicable months of sales.

> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all

royalties or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee.

50.     Plaintiffs' Property is in Noble County in a portion of the Utica Formation that produces raw liquids-rich natural gas. The following horizontal wells in the Seneca System underly the Property and started producing raw liquids-rich natural gas in 2015: Grissom 1H, Grissom 2H, Grissom 3H, Grissom 4H, Mahoney 1H, and Mahoney 2H (*see* Exhibit 2).

**G.     Antero Improperly Calculated Plaintiffs' NGL Royalties Based on NGL Profit in Violation of Plaintiffs' Lease**

51.     Plaintiffs' 2012 Form lease prohibits the deduction of costs incurred to transform NGLs into marketable form such as the MarkWest Fees. Antero regularly deducts at least the MarkWest Fees from Plaintiffs' NGL royalty payments in violation of Plaintiffs' lease.

52.     As demonstrated in Plaintiffs' April 26, 2017, royalty statement (*see* Exhibit 3), Antero wrongly calculated their NGL royalty payments for the Mahoney 1H well:

| Well # | | Well Name | | | State | | County | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sale Date | PC | Type Int | Price | Quantity | Value | Deductions | Net | Interest | Paid Int | Value | Deductions | Net Value |
| 11017.1 | | MAHONEY UNIT 1H | | | | OH | | Noble | | | |
| 1/1/2017 | PPROD | R1 | 0.79 | 273,037.60 | 216,075.56 | 95,897.27 PRC2 | 117,178.29 | 0.03447596 | 0.03447596 | 7,449.41 | 3,409.58 PRC2 | 4,039.83 |
| | BTU Factor | N/A | | | | | | | | | |

53.     This royalty statement indicates that NGL gross proceeds for the Mahoney 1H well in January 2017 were $ 216,075.56 and that the well's MarkWest Fees (denoted as PCR2 in royalty statement) were $95,897.27.

54. The royalty statement multiplies the well's NGL gross proceeds by Plaintiffs' interest in the well (0.03447596) to determine Plaintiffs' share of the well's NGL gross proceeds as $7,449.41—this should be Plaintiffs' NGL royalty payment. Instead, the royalty statement deducts Plaintiffs' share of the MarkWest Fees ($3,409.68) resulting in a final NGL royalty payment of $4,039.83.

55. Since Plaintiffs' lease contains Form 2012 Gas and Market-Enhancement Clauses, Antero is prohibited from deducting MarkWest Fees. Thus, in this example, Plaintiffs suffered damages equal to at least $3,409.68 in connection with the improperly deducted MarkWest Fees.

## H. Antero Also Improperly Calculated Plaintiffs' NGL Royalties Based on Theoretical Y-Grade Proceeds in Violation of Plaintiffs' Lease

56. Plaintiffs' lease requires Antero to pay Plaintiffs' NGL royalty payments based on NGL gross proceeds without any deduction of MarkWest Fees. Antero regularly bases Plaintiffs' NGL royalty payments on theoretical y-grade proceeds in violation of Plaintiffs' lease.

57. As demonstrated in a royalty statement received by Plaintiffs dated September 29, 2015 (*see* Exhibit 4), Antero wrongly calculated Plaintiffs' royalty payments for the Mahoney 1H well:

| Prod Date | Product Int Type | BTU Price | Deck Dcml Dist Dcml | Gross Volume Owner Volume | Gross Value Owner Value | Rlty Chargebacks | Gross Taxes Owner Taxes | Gross Deducts Owner Deducts | Gross Net Owner Net |
|---|---|---|---|---|---|---|---|---|---|
| Prop 11017.1 | | | MAHONEY UNIT 1H | | OH Noble | | | | |
| 06/2015 | GAS | 1.304500 | | 218,782.00 | 802,475.79 | | 8,649.30 | 238,334.40 | 555,492.09 |
| | R1 | 3.67 | 0.03447596 | 7,542.03 | 27,666.12 | 0.00 | 71.93 | 3,281.57 | 24,312.62 |
| | | | | Deduct | Gross | | | Description | Owner |
| | | | | OH_CAT | 2,086.44 | | | OHIO COMMERCIAL AC | 71.93 |
| | | | | TRN3 | 95,184.42 | | | Transportation | 3,281.57 |
| 06/2015 | GAS | 1.000000 | | 0.00 | 0.00 | | 0.00 | 60,339.90 | -60,339.90 |
| | R1 | 0.00 | 0.03447596 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 07/2015 | OIL | 0.000000 | | -11,381.59 | -373,456.94 | | -3,247.31 | -54,920.51 | -315,289.12 |
| | R1 | 32.81 | 0.03447596 | -392.39 | -12,875.29 | 0.00 | -33.48 | 0.00 | -12,841.81 |
| | | | | Deduct | Gross | | | Description | Owner |
| | | | | OH_CAT | -070.90 | | | OHIO COMMERCIAL AC | -33.48 |
| 07/2015 | OIL | 0.000000 | | 9,564.55 | 312,000.57 | | 2,724.11 | 43,941.16 | 265,335.30 |
| | R1 | 32.62 | 0.03447596 | 329.75 | 10,756.62 | 0.00 | 27.97 | 0.00 | 10,728.55 |
| | | | | Deduct | Gross | | | Description | Owner |
| | | | | OH_CAT | 811.20 | | | OHIO COMMERCIAL AC | 27.97 |
| 08/2015 | OIL | 0.000000 | | 7,246.05 | 184,879.60 | | 1,929.90 | 34,683.22 | 148,266.48 |
| | R1 | 25.51 | 0.03447596 | 249.81 | 6,373.90 | 0.00 | 16.67 | 0.00 | 6,357.33 |

58.     This royalty statement shows natural gas royalty payments as if Antero never extracted the y-grade raw make from the raw liquids-rich natural gas. Thus, Antero paid Plaintiffs' NGL royalties based on theoretical y-grade proceeds, not NGL gross proceeds without any Impermissible Deductions (such as the MarkWest Fees) as Plaintiffs' lease requires.

59.     The royalty statement indicates that Antero includes y-grade in Plaintiffs' natural gas royalty payment because the royalty statement uses the high-quality BTU Factor of 1.304500. This BTU Factor includes y-grade raw make, whereas natural gas without y-grade raw make would have a low-quality BTU Factor closer to 1.00000.

60.     Thus, Plaintiff's NGL royalty payment based on theoretical y-grade proceeds equals at most the difference in BTU Factor (1.304500 – 1.0000) multiplied by the natural gas price ($3.67) multiplied by the Plaintiff's share of the natural gas volume (7,542.03), which is $8,428.33.

61.     Since Plaintiffs' lease contains Form 2012 Gas and Market Enhancement Clauses, Antero must pay NGL royalties based on NGL gross proceeds without any Impermissible Deductions (such as the MarkWest Fees). Thus, in this example, Plaintiffs suffered damages equal to the difference between the Plaintiffs' share of Mahoney 1H well's June 2015 NGL gross proceeds without any Impermissible Deductions (such as the MarkWest Fees) and its June 2015 theoretical y-grade proceeds ($8,428.33).

## CLASS-ACTION ALLEGATIONS

62.     Plaintiffs sue individually and under Federal Rule of Civil Procedure 23(b)(3) on behalf of themselves and the following class:

> All persons who executed a lease with Antero for mineral interests underlying an Antero-owned horizontal well in the Seneca System from which streams of raw liquids-rich natural gas can be extracted, which lease contains Form 2012 Gas and Market

18

Enhancement Clauses and entitled its lessors to receive royalty payments from Antero within the last four years.

Excluded from the class is Antero, its officers and directors, counsel of record and their parents, spouses, and children, and judicial officers and their parents, spouses, and children.

63.     Plaintiffs are class members. They can ascertain the class size and class members' identities, which likely number in the hundreds or thousands, through Antero's records.

64.     Plaintiffs' claim is typical of class members' claims because their claim is based on a breach of contract that arose from Antero's Form 2012 Gas and Market Enhancement Clauses.

65.     Common factual and legal questions exist among Plaintiffs and class members. These common questions predominate over questions that might affect only individual class members' claims and generate common answers including:

     a.  Did all class members execute a lease with Antero for mineral interests underlying an Antero-owned horizontal well in the Seneca System that allows for the extraction of raw liquids-rich natural gas;

     b.  Did all class members' leases contain Form 2012 Gas and Market Enhancement Clauses;

     c.  Did all class members, within the last four years, receive royalty payments from Antero;

     d.  Did Antero breach all class members' leases; and

     e.  Are all class members entitled to damages resulting from Antero's breaches?

66.     Absent a class action, most class members will find the cost of litigating their claims prohibitive and will have no effective remedy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation, particularly as to liability because a class action conserves the courts' resources and promotes consistent and efficient adjudication.

67.     Plaintiffs will fairly and adequately represent and protect the interests of the

Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex

litigation and class actions with expertise in oil-and-gas litigation. Neither Plaintiffs nor their

counsel have interests adverse to those of the other class members.

## CLAIMS FOR RELIEF

### Count One – NGL Profit Methodology Breach of Contract

68.     Plaintiffs reallege and incorporate by reference the allegations in the previous

paragraphs.

69.     To prove a breach-of-contract claim, a party must establish: (1) the existence of

an agreement, (2) the nonbreaching party fulfilled its obligations under the agreement; (3) a

breach without legal justification occurred; and (4) the nonbreaching party suffered damages.

70.     Under Ohio law, an oil-and-gas lease is subject to the traditional rules of contract

construction. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 525 (2016). The

parties' lease controls their rights and remedies as these leases contain Form 2012 Gas and

Market Enhancement Clauses that are common to all class members, but which are very unique

in the industry.

71.     Plaintiffs' and class members' leases with Antero contain the uniform Form 2012

Gas and Market Enhancement Clauses.

72.     These clauses prohibit Antero from deducting costs incurred to transform NGLs

into marketable form, which are Impermissible Deductions that include the MarkWest Fees.

73.     Antero, however, uniformly deducts Plaintiffs' and the class members' share of at

least the MarkWest Fees from their NGL royalty payments in violation of the uniform Form

2012 Gas and Market Enhancement Clauses.

20

74. Where Antero pays Plaintiffs and class members NGL royalties based on NGL profit methodology, their damages equal at least their share of MarkWest Fees deducted from their NGL royalty payments over the last four years.

**Count Two – Theoretical Y-Grade Gross Proceeds Methodology Breach of Contract**

75. Plaintiffs reallege and incorporate by reference the allegations in the previous paragraphs.

76. To prove a breach-of-contract claim, a party must establish: (1) the existence of an agreement, (2) the nonbreaching party fulfilled its obligations under the agreement; (3) a breach without legal justification occurred; and (4) the nonbreaching party suffered damages.

77. Under Ohio law, an oil-and-gas lease is subject to the traditional rules of contract construction. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 525 (2016). The parties' lease controls their rights and remedies as these leases contain Form 2012 Gas and Market Enhancement Clauses that are common to all class members, but which are very unique in the industry.

78. Plaintiffs' and class members' leases with Antero contain the uniform Form 2012 Gas and Market Enhancement Clauses.

79. These clauses require Antero to base NGL royalties on NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

80. Antero, however, uniformly bases NGL royalties on theoretical y-grade gross proceeds in violation of the uniform Form 2012 Gas and Market Enhancement Clauses.

81. Where Antero pays Plaintiffs and class members NGL royalties based on theoretical y-grade gross proceeds methodology, their damages equal the difference between what Antero would have paid them if Antero based NGL royalty payments on NGL gross

proceeds without any Impermissible Deductions (such as the MarkWest Fees) and what NGL royalties Antero actually paid them based on theoretical y-grade gross proceeds over the last four years.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully requests this Court:

a.    Enter judgment against Antero in such amounts as will fully and adequately compensate Plaintiffs and class members for the damages they have suffered within the last four years in an amount to be determined at trial;

b.    Award Plaintiffs and class members prejudgment and postjudgment interest;

c.    Award Plaintiffs their expenses of litigation, including reasonable attorneys' fees;

d.    Appoint Plaintiffs as class representatives;

e.    Appoint Plaintiffs' counsel as counsel for the class; and

f.    Award Plaintiffs and class members such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs seek a trial by jury on all counts and matters set forth herein.

Dated: April 22, 2020

Respectfully submitted,

*/s/ Warner Mendenhall*
Warner Mendenhall (#0070165)
**LAW OFFICES OF WARNER
MENDENHALL**
190 N. Union St., Suite 201
Akron, OH 44304
(330) 535-9160
warner@warnermendenhall.com

Daniel R. Karon (#0069304)
Beau D. Hollowell (#0080704)
**KARON LLC**
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

Larry D. Shenise (#0068461)
P.O. Box 471
Tallmadge, Ohio 44278
(330) 472-5622
ldshenise@sheniselaw.com

John W. Barrett**
Brian R. Swiger**
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
T: (304) 345-6555
F: (304) 342-1110
jbarrett@baileyglasser.com
bswiger@baileyglasser.com

***Pro Hac Vice* Applications
Forthcoming

*Attorneys for Plaintiffs and the Class*

23