UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Elaine Grissom & The Grissoms, LLC, | Case No. 2:20-cv-02028 |
| Plaintiffs, | |
| v. | JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Elizabeth A. Preston Deavers |
| Antero Resources Corporation, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs Elaine Grissom and The Grissoms, LLC's Motion for Class Certification. (ECF No. 46.) For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion.

## I.  Background

On April 22, 2020, Plaintiffs filed this case as a putative class action. (ECF No. 1.) The Complaint alleged that Defendant Antero Resources Corporation "violat[ed] uniform oil-and-gas leases by underpaying royalties owed to Plaintiffs in connection with Defendant's receipt of gross proceeds from the sale of marketable natural gas liquids[, or 'NGLs']." (*Id.*) Plaintiffs claim that Defendant "improperly reduced class members' royalty payments by deducting the costs [Defendant] incurred to transform the natural gas stream taken from landowners' wells into 'marketable' natural gas products . . . that [Defendant] could sell at various market hubs." (*Id.*)

Starting in 2012, Defendant leased mineral interests in the Utica Shale Formation in Ohio in targeted geographic areas via independent land brokers or landmen. (ECF No. 1.) In 2012, Plaintiffs and proposed class members entered into such leases with Defendant regarding mineral

interests in Plaintiffs' property. (*Id.*) According to Plaintiffs, Defendant's lease included the following two boilerplate provisions:

> <u>Gas</u>. Lessee shall pay Lessor ____ Percent (__%) of the gross proceeds received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Property and sold by Lessee in an arm's length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Property during applicable months of sales.
>
> . . .
>
> <u>Market Enhancement Clause</u>. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee.

(ECF No. 46 at PageID #507.) Plaintiffs argue that the Market Enhancement Clause forbids Defendant from "deducting any costs associated with transforming natural gas products, such as Residue Gas and NGLs, into marketable form." (*Id.*) According to Plaintiffs, the methods Defendant used to calculate Lessees' royalties deducted Defendant's costs to process and fractionate natural gas to its marketable forms, thereby paying Lessees less than it should have under the 2012 leases. (*Id.* at PageID #508–09.)

Defendant claims that this case is "a continuation of" *Bond, et al. v. Antero Res. Corp.* (Case No. 2:17-cv-14), another proposed class action related to Antero's calculation and payment of oil, gas, and NGLs royalties to the proposed class members. (Case No. 2:17-cv-14, ECF No. 64 at PageID #951.) The dispute in *Bond* also centered on the "Gas" and "Market Enhancement

2

Clause" portions of the leases at issue, and the plaintiffs alleged Antero breached its contracts and violated the leases by underpaying royalties and deducting and retaining unauthorized taxes and costs from royalty payments. (*Id.*) Defendant also points to the fact that attorney Larry Shenise and the Law Offices of Warner Mendenhall were involved in *Bond* and are also counsel in this case. (ECF No. 53.) In *Bond*, this Court denied the plaintiffs' motion for class certification. (Case No. 2:17-cv-14, ECF No. 87.) Defendant argues that the same result is warranted here. (ECF No. 53.) According to Defendant, this case "involves a putative class member from *Bond*, one of the leases from *Bond*, and a subset of the wells connected to the same infrastructure at issue in *Bond*." (ECF No. 53 at PageID #1330.)

## II.     Legal Standard

A trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23 of the Federal Rules of Civil Procedure. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981)). The district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

The trial court, however, is not permitted to inquire into a case's merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule."). Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799

F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (internal quotations omitted); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013) ("[D]istrict courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (internal quotations omitted).

In addition to showing the factors set forth in Rule 23(a) are met, a plaintiff must satisfy one of the three sub-sections of Rule 23(b). *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

### III. Analysis

Plaintiffs seek to represent a class defined as:

> All persons who executed a lease with Antero for mineral interests underlying an Antero-owned horizontal well in the Seneca System from which streams of raw liquids-rich natural gas can be extracted, which lease contains the Form 2012 Gas and Market Enhancements Clause and entitled its lessors to receive royalty payments from Antero within the last four years.

Plaintiffs contend they have met their burden for class certification under Rule 23(a) and move for class certification under Rule 23(b)(3). This Court agrees.

#### A. Rule 23(a)

The burden is on the plaintiff to establish a right to class certification. *Falcon*, 457 U.S. at 160; *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003). Following the proposal of a properly defined class, which Plaintiffs in this case have done, they must satisfy the prerequisites set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

4

1. **Numerosity**

"[T]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  There is no strict numerical test for determining impracticability of joinder. *Williams v. Duke Energy Corp.*, No. 1:08-CV-46, 2014 WL 12652315, at *13 (S.D. Ohio Mar. 13, 2014).  "[I]mpracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (internal quotation marks omitted).

According to Plaintiffs, Defendant has identified 235 leases containing the Gas and Market Enhancement Clause for mineral interests underlying Seneca System wells, confirmed by Plaintiffs' forensic accountant.  (ECF No. 46 at PageID #509.)  Plaintiffs also allege that Defendant produced 368 unique payee numbers for such mineral interest owners.  (*Id.* at PageID #510.)  Plaintiffs claim that joinder would be impracticable because the mineral interest owners with signed leases containing the common clauses are dispersed throughout Ohio, with Seneca System wells spread throughout Noble, Belmont, and Monroe counties.  (*Id.*)  Defendant does not dispute the numerosity factor.  (ECF No. 53.)  Plaintiffs' estimates satisfy the numerosity requirements of Rule 23(a).  See *In re Cty. of Cheboygan*, 2021 U.S. App. LEXIS 2787, *4 (6th Cir., Feb. 1, 2021) (no abuse of discretion occurred when the trial court certified a class of 400 potential members).

2. **Commonality**

"Rule 23(a)(2) requires that for certification there must be 'questions of law or fact common to the class.'" *Am. Med. Sys., Inc.*, 75 F.3d at 1080.  The claims must depend on a common contention "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit, not on whether common questions are raised. *Id.*

As to commonality, Plaintiffs claim that the proposed class is comprised of "individuals who suffered the same injury—namely, damages from [Defendant]'s breach of the common Gas and Market Enhancement Clause." (ECF No. 46 at PageID #510.) Plaintiffs point to the commingled nature of Seneca System natural gas and Defendant's common royalty payment methodology, claiming that "[t]he only difference between class members is their amount of damages," which can be calculated using a common formula. (*Id.* at PageID #511.) Defendant also does not dispute commonality. (ECF No. 53.) The Court finds that the commonality requirement is met here. The claims asserted by Plaintiffs on behalf of themselves and the Class depend on a common contention of such a nature that it is capable of class-wide resolution, and the inquiries necessary will generate common answers that are likely to drive resolution of the lawsuit.

### 3. Typicality

Rule 23(a) further requires that Plaintiffs demonstrate that the claims of the named representatives are typical of claims of the class. Fed. R. Civ. P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Powers*, 501 F.3d at 618 (quoting *Am. Med. Sys.*, 75 F.3d at 1082) (internal quotation marks omitted)). This requirement ensures that this Court may properly attribute a collective nature to the challenged conduct. *Id.* "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399

(6th Cir. 1998). The representative's interests must be aligned with those of the representative group such that the representative's pursuit of its own claims advances the interests of the class. *Id.*

According to Plaintiffs, Defendant "breached Plaintiffs' common Gas and Market Enhancement Clause and underpaid them the same way it breached all class members' leases and underpaid them." (ECF No. 46 at PageID #513.) Plaintiffs claim that their Seneca System wells resemble all proposed class members' Seneca System wells, and Plaintiffs have "virtually *all* legal or factual issues in common" with the proposed class members. (*Id.* (emphasis in original).) Defendant also does not contest typicality. (ECF No. 53.) This Court agrees with Plaintiffs that there is no material variation in the fact patterns amongst the claims of the proposed class. Each proposed class member's claim, just like Plaintiffs' claims, is identical because the question to be decided is whether Defendant breached its leases and underpaid royalties. This common course of conduct can be reviewed by this Court under a common legal theory and will allow the adjudication of this case on behalf of the entire class. Because the proposed class representatives seek to prosecute the same claim for themselves and for the absent proposed class members, under identical legal theories, typicality is established.

### 4. Fair and Adequate Representation

Rule 23(a)(4) requires that the class representative, "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is divided into the adequacy of the class representative and the adequacy of class counsel.

#### a. Class Representative

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class

7

and possess the same interest and suffer the same injury as the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Plaintiffs allege that their interest in recovering damages is identical to that of proposed class members. (ECF No. 46 at PageID #513.) Plaintiffs claim to be deeply committed to the class, and acutely able to monitor the lawsuit. (ECF No. 57 at PageID #1591.) However, according to Defendant, Plaintiffs offer no evidence in support of their adequacy burden. (ECF No. 53 at PageID #1338.) Defendant claims that "Plaintiff[s'] motion contains only *one conclusory sentence* on adequacy: that 'Plaintiffs' interests in recovering damages are identical to class members' interests.'" (*Id.* (emphasis in original) (quoting ECF No. 46 at PageID #513).) Defendant argues that Plaintiffs fail to provide any evidentiary support for such a claim, and also fail to address whether Mrs. Grissom is sufficiently knowledgeable and interested in the case. (*Id.*) Regardless of Plaintiffs' failure to carry their evidentiary burden, Defendant claims, Mrs. Grissom is not an adequate class representative. (*Id.*)

Defendant first argues that, as sole owner and representative for The Grissoms LLC, Mrs. Grissom "lacks knowledge and involvement in the litigation and has failed to monitor proposed class counsel, making her unsuitable to represent the interests of others. (*Id.* at PageID #1338–39.) Defendant claims that because Mrs. Grissom has participated so minimally, she has abdicated her role in the case. (*Id.*) Defendant also claims that Mrs. Grissom's "sparse, if not nearly non-existent" communication with counsel demonstrates that she cannot adequately monitor class counsel. (*Id.* at PageID #1342.) According to Defendant, Mrs. Grissom has been unaware of key things such as settlement offers, court hearings, counterclaims, and depositions. (*Id.* at PageID #1343.) Defendant points to Mrs. Grissom's deposition testimony including her statements that

8

she was not sure of precisely how the royalties are calculated and deductions are made, and her unawareness as to information regarding the wells and the extraction process, such as "whether [the] gas stream is fractionated" and whether NGLs can be sold when they are in gaseous form. (ECF No. 53 at PageID #1340–41; ECF No. 53-2 at PageID #1416–17, 1430.) Defendant claims these issues are central to the case at hand, and Mrs. Grissom's lack of awareness or understanding means that she, and by extension The Grissoms, LLC, is not an adequate class representative. Defendant likens this case to *In re AEP ERISA Litig.*, No. C2-03-67, 2008 WL 4210352 (S.D. Ohio Sept. 8, 2008), in which a representative was found to be inadequate because he had "almost no involvement with the case whatsoever."

In response, Plaintiffs argue that Mrs. Grissom's actions in seeking out counsel to represent herself and others regarding her dissatisfaction with Defendant's actions is evidence of her aptitude and involvement in the case. (ECF No. 57 at PageID #1592.) Plaintiffs also claim that attorney Larry Shenise regularly advises Mrs. Grissom of the lawsuit's progress, and that Mrs. Grissom has an understanding of the issues in the case and what a class action entails. (*Id.* at PageID #1592–94.) Plaintiffs acknowledge that Mrs. Grissom is busy and "relie[s] on her lawyers to do their job, conducting the technical ins and outs of her lawsuit," but Plaintiffs dispute that such reliance constitutes The Grissoms, LLC "abdicating" its case. (*Id.* at PageID #1595–96.) Plaintiffs argue that this case is far from what occurred in *In re AEP ERISA Litig.*, in which the representative "had almost no involvement with his case whatsoever" and "had not spoken with his lawyers since he initially contacted them three years earlier." (*Id.* at PageID #1597 (internal citations omitted).) In that case, the plaintiff had seen a notice about legal action against the defendant and asked to be "put on the list" of class members, did not meet with his attorneys in person until the morning of his deposition, and did not receive status updates about the case. (*Id.*)

9

The Court agrees with Plaintiffs that this case is not analogous to *In re AEP ERISA Litig.* Defendant relies on cases in which a representative lacked fundamental knowledge of the facts or allegations, or had no involvement in the case other than a deposition. (ECF No. 53 at PageID #1339.) While she may not be able to explain everything about this lawsuit in precise legal or scientific terms, Mrs. Grissom demonstrated in her deposition that she understands the basis for this lawsuit and is in communication with her attorney to stay updated on the case. (ECF No. 57 at PageID #1592–97.) Mrs. Grissom consulted an attorney because she and "all the people in [the] area were dissatisfied with the deductions that were occurring with [royalty] payments." (*Id.* at PageID #1592.) In her own words, Mrs. Grissom also knows that "NGLs are the things that are of concern," and that "the wet gas [produced from her property] goes to MarkWest[ and is] changed in many, many forms before it's marketable." (*Id.* at PageID #1594.) Mrs. Grissom also testified regarding her desire to be involved in the case, stating that she would testify in any potential trial and would attend settlement meetings or mediations. (*Id.* at PageID #1597.) Mrs. Grissom avers that she is aware of her obligation to the absent proposed class members and that she is committed to continuing a vigorous prosecution of the class's claims.

Defendant also argues that Mrs. Grissom lacks standing to sue Antero in her individual capacity and is therefore not an adequate class representative. (*Id.* at PageID #1344.) The parties fail to brief this issue fully. In addition, after the briefing was complete on Plaintiffs' Motion for Class Certification, the Sixth Circuit issued in *In re: GEICO Casualty Company*, addressing the issue of standing at the class certification stage, which would certainly impact the parties' positions:

> "To establish standing, the plaintiff must allege three well-known ingredients: that the plaintiff has suffered an injury; that the injury traces to the defendant's actions; and that a ruling for the plaintiff would likely redress this injury." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021). "[J]ust because a plaintiff's claim

10

might fail on the *merits* does not deprive the plaintiff of *standing* to assert it." *Id.* at 489 (emphasis in original). Whether class members who allege an injury sufficient for Article III standing can recover all the damages they seek "is a merits question." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020) (quoting *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018)).

*In re GEICO Cas. Co.*, No. 21-0309, 2022 U.S. App. LEXIS 13523, at *3 (6th Cir. May 18, 2022). Accordingly, the Court finds that Plaintiffs will fairly and adequately represent the class.

### b. Class Counsel

In assessing the adequacy of representation, this Court must also consider whether the Class representative will vigorously prosecute the proposed class members' interest through qualified counsel. *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 553 (S.D. Ohio 1999). In support of their arguments regarding adequacy of representation, Plaintiffs point to "interim co-lead counsel['s] . . . extensive work, including drafting Plaintiffs' complaint, conducting discovery, and preparing this class-certification motion, which demonstrates their experience and capability to satisfy Rule 23(g)'s criteria for appointment as co-lead counsel." (ECF No. 46 at PageID #513.) Under Rule 23(g), when appointing class counsel a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).

Defendant counters that the evidence Plaintiffs submitted is insufficient because although it speaks to the firms' experience with class actions, it does not provide specific details about their work in this case or information about the firms' familiarity with oil and gas issues. (*Id.*) Defendant's arguments are not well taken.

Plaintiffs have supported their Motion with sufficient evidence of their attorneys' extensive work on this case, including "draft[ing] and pursu[ing] written and document discovery, participat[ing] in countless meet-and-confers, [] wr[iting] [Defendant] several discovery letters[,] . . . attend[ing] and [taking] depositions[,]" and moving for class certification. (ECF No. 57 at PageID #1600.) Plaintiffs acknowledge that their class certification brief does not mention attorney Shenise, and explain that he is Mrs. Grissom's attorney and is not seeking appointment as class counsel. (*Id.* at PageID #1601.) As to the other attorneys and firms involved, the Court finds that their representation is certainly adequate.

In their motion for class certification, Plaintiffs also ask that Plaintiffs' counsel be appointed as class counsel. (ECF No. 46 at PageID # 517.) For the reasons stated above, the Court finds that Plaintiffs' counsel will serve the best interests of the class.

### B. Rule 23(b)(3)

Plaintiffs seek to certify this Class as an opt-out class action under Rule 23(b)(3). Class certification pursuant to Rule 23(b)(3) is appropriate whenever the Court finds that (1) common questions of fact or law predominate over individual questions ("predominance"), and (2) class treatment of plaintiff's claims is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

"'The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *In re GEICO Cas. Co.*, 2022 U.S. App. LEXIS 13523, at *4 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under

12

Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at *4–*5. "No matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action[.]" *Id.* at *5 (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013)).

According to Plaintiffs, "[t]he facts will uniformly prove that [Defendant] miscalculated class members' royalty payments and breached class members' uniform contracts," and that where a contract is uniform to proposed class members, courts often find that common issues predominate. (ECF No. 46 at PageID #514–15 (citing *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019).) Plaintiffs claim that the terms and conditions which control royalty payments are virtually identical among proposed class members, and Defendant uniformly miscalculated royalty payments in breach of the uniform contracts. (*Id.* at PageID #515–16.) Plaintiffs argue that the only contested issue, whose interpretation of the Gas and Market Enhancement Clause is correct, will generate a common answer to all proposed class members. (*Id.* at PageID #516.)

Defendant argues that Plaintiffs fail to satisfy the predominance requirement because they have "failed to offer a model capable of assessing damages on a class-wide basis." (ECF No. 53 at PageID #1348.) Plaintiffs contend that their accounting expert addressed whether Defendant "engaged in a common method of royalty accounting to calculate the royalties it paid to class members, and its methodology consistently resulted in royalty payments to class members that were less than what they should have received under their contracts." (ECF No. 57 at PageID #1602.) Therefore, according to Plaintiffs, their common method of royalty accounting will

13

generate a common answer to its question of whether Defendant breached its leases with proposed class members. (*Id.*) Plaintiffs cite to *Eaton v. Ascent Res. – Utica, LLC*, in which the defendant argued that individual issues predominated because "deductions vary by contract and damages cannot be calculated on a class-wide basis." *Eaton v. Ascent Res. – Utica, LLC*, No. 2:19-CV-3412, 2021 WL 3398975, at *13 (S.D. Ohio Aug. 4, 2021). In *Eaton*, this Court noted that "[t]he issue of individualized damages amounts does not risk predomination because this Court may bifurcate the issues of liability and damages if that proves to be the appropriate course." *Id.*

This Court agrees that the reasoning in *Eaton* applies here. Although Defendant takes issue with Plaintiffs' damages methodology, the Court agrees with Plaintiffs that this would be "a battle of the experts—a merits-based battle that occurs later." (ECF No. 57 at PageID #1605.) The questions regarding royalty payments under the uniform leases predominate over possible individual questions since the alleged wrongful conduct was the same with respect to all proposed class members and can be determined on a class-wide basis. No individual issues are likely to be raised to defeat predominance.

### 2. Superiority

Class certification offers judicial efficiencies permitting common claims and issues to be tried only once, with binding effect on all parties. It also avoids the possibility of inconsistent adjudications and facilitates settlement by permitting agreements binding all potential claimants. Rule 23(b)(3) lists the following non-exclusive factors as to the superiority requirement:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). *See also Amchem*, 521 U.S. at 615–16.

The first factor addresses whether the interest of proposed class members in conducting separate lawsuits is so strong as to require denial of class certification. Defendant claims that according to Plaintiffs' expert's calculations, The Grissoms, LLC is entitled to approximately $700,000 in damages, eleven class members are each entitled to over $280,000 in damages, and the average of the class member's purported damages exceeds $50,000. (ECF No. 53 at PageID #1354.) Plaintiffs point out that the eleven class members allegedly entitled to a high amount of damages only constitute three percent of the proposed class. (ECF No. 57 at PageID #1606.) Plaintiffs also argue that the figures used by Defendant are based on estimates from Plaintiffs' expert before the expert acknowledged the possibility of a 25 percent damages reduction. (*Id.*) Noting Defendant's argument regarding average damages of $50,000 for the remaining class members, Plaintiffs claim that it would be unaffordable for many smaller stakeholders to pursue individual claims. (*Id.*) Plaintiffs point out that a single expert's report contained in Plaintiffs' class certification brief cost $39,000, and the costs involved in bringing individual lawsuits would be prohibitive for proposed class members. (*Id.* at PageID #1607.)

The second factor requires consideration of the extent and nature of any existing litigation as to the controversy already commenced by or against members of the class. This factor suggests the superiority of maintaining this suit as a class action. The third superiority factor is the desirability of conducting the litigation in a particular forum and the fourth and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 616. The forum here is convenient and the management of this case as a class action presents no unusual difficulties. These factors suggest the superiority of maintaining this suit as a class action.

### C. Ascertainability

Defendant further argues that class certification is inappropriate here because Plaintiffs have not defined "liquids-rich natural gas" or set a timeframe for the class period. (ECF No. 53 at PageID #1354.) Although Plaintiffs provide that they intend the class to cover those receiving royalty payments within the last four years, Defendant claims this timeframe is unclear because Plaintiffs could mean "four years from the date of the [c]omplaint or four years from the date of the motion [for class certification]." (*Id.*) Defendant also argues that there is no end date for the class period, and an open-ended class period is "untenable." (*Id.*) Because of this, Defendant claims, the class definition is not definite, and the class is therefore not sufficiently ascertainable. (*Id.*) *See Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000) ("While class definitions are obviously individualized to the given case, important elements of defining a class include: (1) specifying a particular group at a particular time frame and location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner.").

Plaintiffs argue that the class definition "provides objective criteria to ascertain class members and could allow modification to provide even greater clarity. (ECF No. 57 at PageID #1608.) Plaintiffs state that "liquids-rich natural gas" simply means a natural gas stream containing non-methane hydrocarbons. (*Id.*; ECF No. 46-1 at PageID #524.) Plaintiffs also specify that the class definition "captures the time period extending from four years before filing the complaint to the lawsuit's conclusion." (ECF No. 57 at PageID #1609.) Plaintiffs explain that the class definition "includes no end date because [Defendant]'s common practices continue to injure Plaintiffs and class members." (*Id.*) As Plaintiffs note, this Court previously allowed an open-ended class date in *Eaton v. Ascent Res. – Utica, LLC*. *Eaton*, 2021 WL 3398975, at *8.

16

Due to the nature of the claims in this case, the Court finds that the same is appropriate here. Accordingly, the Court agrees with Plaintiffs that the proposed class is sufficiently ascertainable.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 46) and appoints attorneys Logan Trombley, Warner Mendenhall, Daniel R. Karon, Beau D. Hollowell, John W. Barrett, Brian R. Swiger, and Victor Woods as class counsel. This Case remains open.

**IT IS SO ORDERED.**

**8/6/2022**                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                               **UNITED STATES DISTRICT JUDGE**